*E-FILED - 9/16/10*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THOMAS MCCOY, | No. C 08-4687 RMW (PR) |
| Petitioner, | ORDER GRANTING WRIT OF HABEAS CORPUS |
| v. | |
| WARDEN B. CURRY, | |
| Respondent. | |

Petitioner, a state prisoner proceeding pro se, sought a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging a decision by the California Board of Parole Hearings ("Board") in finding him unsuitable for parole. Respondent was ordered to show cause why the writ should not be granted. Respondent has filed an answer, along with a supporting memorandum of points and authorities and exhibits. Petitioner has responded with a traverse. For the reasons set forth below, the petition for a writ of habeas corpus is **GRANTED**.

## BACKGROUND[1]

On October 12, 1982, petitioner and his companion approached the victim, a 72-year old security guard, intending to steal the victim's gun. (Tr. at 11-12.) Petitioner had a gun given to

---

[1] The relevant facts are taken from the Transcript of the September 12, 2006 Subsequent Parole Consideration Hearing. (Resp. Ex. 1, Ex. A ("Tr.").)

Order Granting Writ of Habeas Corpus
P:\PRO-SE\SJ.Rmw\HC.08\McCoy687granthc.wpd

him by someone and petitioner demanded the victim hand over his own gun. (Id. at 12.) The victim reached for his gun, petitioner believed he was going to be shot, so petitioner shot the victim several times and then ran. (Id. at 12, 13.) After running a short distance, petitioner returned to the victim to steal the victim's gun and then ran again. (Id.) A witness saw petitioner running after hearing gunshots and began to chase him. (Id.) Petitioner pointed the gun at this witness and told him to get an ambulance because the victim had been shot. (Id.) The victim was pronounced dead by the time he arrived at the hospital. (Id.)

In 1984, a Los Angeles County Superior Court jury found petitioner guilty of first degree murder (Cal. Pen. Code § 187). Petitioner was sentenced to 27-years to life. Petitioner filed a state habeas petition in superior court challenging the denial of his parole. The superior court denied petitioner's petition on February 19, 2008. The California Court of Appeal also denied his petition on May 15, 2008. The California Supreme Court denied his petition on June 30, 2008. Petitioner thereafter filed the instant petition.

**DISCUSSION**

A.  Standard of Review

A district court may not grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. 2254(d). The first prong applies both to questions of law and to mixed questions of law and fact, Williams (Terry) v. Taylor, 529 U.S. 362, 407-09 (2000), while the second prong applies to decisions based on factual determinations, Miller-El v. Cockrell, 537 U.S. 322, 340 (2003).

A state court decision is "contrary to" Supreme Court authority, that is, falls under the first clause of 2254(d)(1), only if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than

[the Supreme] Court has on a set of materially indistinguishable facts." Williams (Terry), 529 U.S. at 412-13. A state court decision is an "unreasonable application of" Supreme Court authority, falls under the second clause of 2254(d)(1), if it correctly identifies the governing legal principle from the Supreme Court's decisions but "unreasonably applies that principle to the facts of the prisoner's case." Id. at 413. The federal court on habeas review may not issue the writ "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." Id. at 411. Rather, the application must be "objectively unreasonable" to support granting the writ. See id. at 409.

"Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary." Miller-El, 537 U.S. at 340. Under 28 U.S.C. 2254(d)(2), a state court decision "based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." Miller-El, 537 U.S. at 340; see also Torres v. Prunty, 223 F.3d 1103, 1107 (9th Cir. 2000).

When there is no reasoned opinion from the highest state court to consider the petitioner's claims, the court looks to the last reasoned opinion. See Ylst v. Nunnemaker, 501 U.S. 797, 801-06 (1991); Shackleford v. Hubbard, 234 F.3d 1072, 1079, n.2 (9th Cir. 2000). In this case, the last reasoned opinion is that of the superior court denying petitioner's habeas petition (Resp., Ex. 2).

B.  Petitioner's Claims

As grounds for federal habeas relief, petitioner asserts that the decision to deny parole was not supported by "some evidence," and thus violated his right to due process.

The Due Process Clause does not, by itself, entitle a prisoner to release on parole in the absence of some evidence of his or her "current dangerousness." Hayward v. Marshall, 603 F.3d 546, 555, 561 (9th Cir. 2010) (en banc). Under California law, however, "some evidence" of current dangerousness is required in order to deny parole. Id. at 562 (citing In re Lawrence, 44 Cal.4th 1181, 1205-06 (2008) and In re Shaputis, 44 Cal.4th 1241 (2008)). This requirement gives California prisoners a liberty interest protected by the federal constitutional guarantee of

due process in release on parole in the absence of "some evidence" of their current dangerousness. Cooke v. Solis, 606 F.3d 1206, 1213-1214 (9th Cir. 2010).

When a federal habeas court in this circuit is faced with a claim by a California prisoner that his right to due process was violated because the denial of parole was not supported by "some evidence," the court "need only decide whether the California judicial decision approving the governor's decision rejecting parole was an 'unreasonable application'[] of the California 'some evidence' requirement, or was 'based on an unreasonable determination of the facts in light of the evidence.'" Hayward, 603 F.3d at 562-63 (quoting 28 U.S.C. 2254(d)(1)-(2)); Cooke, 606 F.3d at 1213. California's "some evidence" requirement was summarized in Hayward as follows:

> As a matter of California law, 'the paramount consideration for both the Board and the Governor under the governing statutes is whether the inmate currently poses a threat to public safety.' There must be 'some evidence' of such a threat, and an aggravated offense 'does not, in every case, provide evidence that the inmate is a current threat to public safety.' The prisoner's aggravated offense does not establish current dangerousness 'unless the record also establishes that something in the prisoner's pre- or post- incarceration history, or his or her current demeanor and mental state' supports the inference of dangerousness. Thus, in California, the offense of conviction may be considered, but the consideration must address the determining factor, 'a current threat to public safety.'

Hawyard, 603 F.3d at 562 (quoting Lawrence, 44 Cal.4th. at 1191, 1210-14); see Cooke, 606 F.3d at 1213-1214 (describing California's "some evidence" requirement).

The two Board commissioners on the panel that heard petitioner's case were divided as to whether petitioner should be granted parole. The commissioner who voted to deny parole based his denial on the fact that he found petitioner's offense to be especially "horrible, vicious, [and] callous" because of the age of the 72 year-old victim who was shot three times, the "trivial" motive behind the offense, and the commissioner's dissatisfaction with petitioner's "expression of remorse." (Tr. at 57.) The commissioner also stated that he wanted petitioner to provide more information about his post-parole plans, noted that petitioner's last 115 "was only eight years ago," and expressed concern that the district attorney opposed petitioner's release. (Id.) The commissioner "concurred with [his] colleague," who voted to grant parole, that petitioner had "been programming very well" and suggested that petitioner continue his education and

anger management programs.  (Id. at 58.)  The commissioner assured petitioner that he was "[v]ery, very close" to obtaining parole and explained that he and the other commissioner "were going back and forth, and [he] just decided to go the conservative route on this matter."  (Id.)

Because petitioner's parole consideration hearing resulted in a tie, in an en banc meeting on November 21, 2006, the full Board voted again on whether petitioner should receive parole.  (Resp. Ex. 1, Ex. C.)  A majority of the members "found [petitioner] unsuitable for parole," but gave no further explanation of their decision.[2]  (Id.)

The state superior court upheld the Board's decision, citing two factors.  First, the superior court stated that the Board found petitioner's commitment offense to be "especially heinous because the motive was very trivial in relation to the offense," which provided "some evidence that petitioner is a greater risk of danger to society than other first-degree murderers."  (Resp. Ex. 2 at 1-2.)  The superior court also cited a May 24, 2007 psychological report in which petitioner's "risk of future violence" was rated as "moderate" in two categories: "management of future risk" and historical domain.  (Id. at 2.)

Both petitioner and respondent agree that the May 24, 2007 psychological report cited by the state court does not exist and does not pertain to petitioner.  (Pet. at 22, Ans. at 9.)  Accordingly, this court concludes that the superior court's reliance on this factor in upholding the Board's denial of parole was based on an unreasonable determination of the facts and thus, cannot be "some evidence" of current dangerousness.

Consequently, the state court's decision upholding the Board's denial of parole is based solely on the facts of the commitment offense.  This is an unreasonable application of California's "some evidence" requirement.  See Hayward, 645 F.3d at 562-63.  In Lawrence, the California Supreme Court held that in cases

> in which evidence of the inmate's rehabilitation and suitability for parole under the governing statutes and regulations is overwhelming, the only evidence related to unsuitability is the gravity of the commitment offense, and that offense is both temporally remote and mitigated by circumstances indicating the conduct is

---

[2] Petitioner's second claim is that he failed to receive a written statement of reasons for the denial from the en banc vote.  Because the court grants the petition for habeas corpus on petitioner's first claim, the court does not address petitioner's second claim.

> unlikely to recur, the immutable circumstance that the commitment offense involved aggravated conduct does not provide "some evidence" *inevitably* supporting the ultimate decision that the inmate remains a threat to public safety.

Lawrence, 44 Cal. 4th at 1191 (emphasis in original); see also Cooke, 606 F.3d at 1214 (finding California's "some evidence" requires "more than the crime or its circumstances alone to justify the Board's or Governor's finding of current dangerousness").

Moreover, besides the Board's reliance on petitioner's commitment offense, the factors cited by the commissioner do not pertain to petitioner's "current dangerousness," and thus are also insufficient to support the denial of parole. Hayward, 603 F.3d at 561. The commissioner said he was dissatisfied with petitioner's display of remorse, but did not specify what he felt was lacking. (Tr. at 57.) More importantly, there is no support for the proposition that petitioner's allegedly inadequate display of remorse is relevant to his current level of dangerousness, Hayward, 603 F.3d at 561, especially in light of the fact that the other commissioner concluded that petitioner had displayed understanding of "the nature and magnitude of the offense." (Tr. at 53.) The commissioner denying parole also "felt uncomfortable" about petitioner's parole plans, but does not specify what kind of information he wanted to have, or how the additional information would pertain to petitioner's level of "current dangerousness." (Tr. at 57.) Hayward, 603 F.3d at 561.

In contrast, the evidence of petitioner's "rehabilitation and suitability for parole" was extensive: petitioner had little history of violent crime and had matured since his offense; petitioner "ha[d] never been involved in racial riots, assaults on others, possession of weapons or other aggressive behavior during the 23 years of incarceration;" petitioner had shown that "he underst[ood] the nature and magnitude of the offense" and was assessed to be at significantly lower-than-average risk of engaging in "dangerous behavior" compared to other inmates as well and posed "no more risk than the average citizen"; petitioner had engaged in extensive programming through therapy, educational, and vocational programs; and petitioner had "realistic parole plans,""includ[ing] a job offer and family support." (Tr. at 53-55.) This evidence "of rehabilitation and suitability for parole" is "overwhelming," and "the only evidence related to unsuitability" in this case was "the gravity of the commitment offense." See

1 | Lawrence, 44 Cal. 4th at 1191.

Furthermore, the commitment offense was "both temporally remote and mitigated by circumstances indicating the conduct is unlikely to recur." See id. The murder was committed twenty-four years prior to the parole hearing, when petitioner was in 10th grade. (Tr. at 55.) These circumstances indicate the conduct was unlikely to recur because at the time of the parole denial petitioner was no longer a teenager, had completed a substantial number of anger management and therapy programs in prison, and developed marketable skills through his involvement in educational and vocational programs. (Id. at 53-55.)

In addition, at the time of the parole decision, petitioner had served more than twenty-two years in state prison, six more years than his suggested base term. (Tr. at 1.) "[A]fter these prisoners have served their suggested base terms, the underlying circumstances of the commitment offense alone rarely will provide a valid basis for denying parole when there is strong evidence of rehabilitation and no other evidence of current dangerousness." Lawrence, 44 Cal.4th at 1211; see also Cooke, 606 F.3d at 1214 (under California law, the facts of the commitment offense alone do not constitute "some evidence" of current dangerousness). As described above, there is strong evidence of petitioner's rehabilitation and no other evidence of current dangerousness cited by the Board or the state court.

Under California law, as explained in Lawrence, "the aggravated nature of the crime does not in and of itself provide some evidence of *current* dangerousness to the public unless the record also establishes something in the prisoner's pre- or post-incarceration history, or his or her current demeanor and mental state, indicates that the implications regarding the prisoner's dangerousness that derive from his or her commission of the commitment offense remain probative of the statutory determination of a continuing threat to public safety." 44 Cal.4th at 1214; see Hayward, 603 F.3d at 562; Cooke, 606 F.3d at 1214.

Here, petitioner had little criminal history other than being found guilty of battery after a fight at school prior to being charged with the underlying convictions. (Tr. at 15.) There was no evidence suggesting current dangerousness in petitioner's mental state, which was found by the examining psychologist not to present a threat of danger to the public if petitioner were released.

(Resp. Ex. 1, Ex. B at 3.). In addition, the commitment offense was remote in time and committed under circumstances unlikely to recur, and petitioner had served six years over his base term. (Tr. at 1, 53-55.) Finally, the examining psychologist found that petitioner had developed skills that would enable him to easily gain employment and contribute to his community. (Resp. Ex. 1, Ex. B at 4.) Consequently, California's "some evidence" requirement as explained by Lawrence was not met in this case simply by relying on circumstances of the commitment offense. Therefore, the state court in upholding the Board's denial of parole based solely on the commitment offense unreasonably applied the "some evidence" requirement. See Cooke, 606 F.3d at 1216.

Pursuant to the standard announced in Hayward entitling a petitioner to habeas relief if the state court unreasonably applied California's "some evidence" requirement, the petition for a writ of habeas corpus in this case will be granted. See Hayward, 603 F.3d 563 (citing 28 U.S.C. 2254(d)(1)); see also Cooke, 606 F.3d at 1216 (granting petition under Hayward where parole denial rested solely on commitment because that was not a reasonable application of California's "some evidence" standard).

## CONCLUSION

The petition for a writ of habeas corpus is GRANTED. Within twenty (20) days of the date of this order, the California Board of Parole Hearings must calculate a term for petitioner and set an imminent date for his release in accordance with Section 3041(a) of the California Penal Code. Within ten (10) days of petitioner's release, respondent must file a notice with the court confirming the date on which petitioner was released.

IT IS SO ORDERED.

DATED: 9/16/10

RONALD M. WHYTE
United States District Judge